## NEVADA GAMING COMMISSION, APPELLANT, *v.* CONSOLIDATED CASINOS CORPORATION, TAHOE DIVISION DBA SAHARA TAHOE, RESPONDENT.

No. 9008

March 16, 1978                                575 P.2d 1337

*Robert List,* Attorney General, and *A. J. Hicks,* Deputy Attorney General, Carson City, for Appellant.

*Lionel Sawyer & Collins,* Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

On May 30, 1975, two State Gaming Control Board agents arrived at the Sahara Tahoe Hotel to conduct a routine casino

audit, which by established practice starts with a surprise observation of the "count" of gaming receipts. Displaying their photo identity cards to a security guard, they requested access to the casino cashier's cage and its inner "count room." Admitted to the cage, they met Anne Corson, the credit supervisor then in charge of that area. The agents informed Corson they were there to observe the count, and, without producing any identification or other authorization, entered the count room.

Within one minute after their entry, Corson asked the agents to leave the cage area because they had not been "checked out." A few moments later, the assistant manager arrived at the cage, confirmed the agents' authority by a telephone call to the Gaming Control Board in Carson City, and immediately granted the agents permission to re-enter the count room. The agents declined, however, claiming they had lost the surprise element essential to a proper audit. Only then, just before departing, did the agents show the assistant manager their "audit engagement letter," establishing their authority to conduct an audit on the Control Board's behalf.

A complaint was thereupon filed charging respondent, which operates the casino, with violations of NRS 463.140(3)(a) and (d),[1] and Nev. Gaming Regs. 5.030[2] and 5.060.[3] After hearings the Gaming Commission fined respondent $25,000. Respondent petitioned the district court for review of the Commission's findings of fact and order, and the court vacated the Commission's order. We affirm that judgment.

[1]NRS 463.140(3) provides in pertinent part:

The board and the commission and their agents, inspectors and employees have the authority:

(a) To inspect and examine all premises wherein gaming is conducted or gambling devices or equipment are manufactured, sold or distributed. . . .

(d) To demand access to and inspect, examine and audit all papers, books and records or applicants and licensees respecting the gross income produced by any gaming business, . . .

[2]Nev. Gaming Reg. 5.030 provides:

Violation of any provision of the Nevada Gaming Control Act or of these regulations by a licensee, his agent or employee shall be deemed contrary to the public health, safety, morals, good order and general welfare of the inhabitants of the State of Nevada and grounds for suspension or revocation of a license. Acceptance of a state gaming license or renewal thereof by a licensee constitutes an agreement on the part of the licensee to be bound by all of the regulations of the commission as the same now are or may hereafter be amended or promulgated. It is the responsibility of the licensee to keep himself informed of the content of all such regulations, and ignorance thereof will not excuse violations.

[3]Nev. Gaming Reg. 5.060 provides:

No applicant, licensee or entolled person shall neglect or refuse to produce records or evidence or to give information upon proper and lawful demand by an authorized agent of the board or commission, or shall otherwise interfere, or attempt to interfere, with any proper and lawful efforts by the commission, the board or any agent of either to procure such information.

In reviewing a Gaming Commission decision, this court will examine the record to determine if there is any evidence to support the Commission's order. M & R Investment Company v. Nevada Gaming Commission, 93 Nev. 35, 559 P.2d 829 (1977). The order should be affirmed unless the Commission acted arbitrarily, capriciously or contrary to law. *See* Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972); Tax Com. v. Mackie, 75 Nev. 6, 333 P.2d 985 (1959). Here, however, we find the Commission's order arbitrary and capricious, because the agents failed to follow the Gaming Board's regulatory mandates.

It has long been recognized that the gaming industry invites corruption unless it is effectively controlled. *See* Nev. Tax Com. v. Hicks, 73 Nev. 115, 310 P.2d 852 (1957); NRS 463.130. To that end, the legislature gave the board, commission and their agents authority to "[d]emand access to and inspect, examine and audit all papers, books and records of . . . licensees respecting the gross income produced by any gaming business, . . ." NRS 463.140(3)(d). The legislature also authorized the commission to adopt regulations governing the fiscal operation of licensees. *See* NRS 463.156; 463.157; 463.158; 463.159; 463.1592. As part of those regulations the Commission adopted Nev. Gaming Reg. 6.110(2) which provides in pertinent part: "Audits or examinations shall be conducted in conformity with acceptable auditing standards. . . ."

Testimony before the Commission established that the Gaming Control Board has not authorized all of its agents to conduct audits and surprise counts. Only certain authorized agents of the audit division are granted such power. As accepted general practice, auditing procedures utilized in the gaming industry, both in the case of privately retained auditors and Gaming Control Board auditors, contemplate the use of audit engagement letters. Clearly, we think, the gaming authorities must continue to utilize this or some other reasonable alternative means of verifying authority to audit. Obviously, a licensee's employees must be permitted to know the identity and authority of persons requesting access to private areas where money is counted and stored. Indeed, the commission itself has specifically charged licensees with the duty to "safeguard . . . assets." Nev. Gaming Reg. 6.050(1)(a)(1).

When Anne Corson questioned their authority, the agents should have produced both the audit engagement letter and their identity cards. The agents would then have conformed to the acceptable auditing standards dictated by the gaming regulations. *See* Nev. Gaming Reg. 6.110(2), cited above. In all

probability, the misunderstanding which aborted the audit would have been prevented.

We deem it arbitrary and capricious to fine a licensee $25,000 for the actions of a well motivated employee, whose actions were in good faith, and occasioned by imprecise procedures on the part of the gaming agents. For that reason, the judgment vacating the order of the Gaming Commission is affirmed.[4]

BATJER, C. J., and MOWBRAY, THOMPSON, and MANOU-KIAN, JJ., concur.

---

[4]Since the time in question, membership of the Gaming Control Board and the Gaming Commission has changed.